**NOT FOR PUBLICATION**

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| DAVID R., <br><br> Plaintiff, <br><br> v. <br><br> KILOLO KIJAKAZI <br> ACTING COMMISSIONER OF SOCIAL SECURITY ADMINISTRATION, <br><br> Defendant. | Civil Action No. 2:21-CV-20465 (SDW) <br><br> **OPINION** <br><br> September 26, 2022 |

**WIGENTON**, District Judge.

Before this Court is Plaintiff David R.'s ("Plaintiff")[1] appeal of the final administrative decision of the Commissioner of Social Security ("Commissioner") with respect to Administrative Law Judge David Suna's ("ALJ Suna") denial of Plaintiff's claim for disability insurance benefits ("DIB") under the Social Security Act (the "Act"). This Court has subject matter jurisdiction pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3). Venue is proper pursuant to 28 U.S.C § 1391(b). This appeal is decided without oral argument pursuant to Federal Rule of Civil Procedure 78. For the reasons set forth below, this Court finds that ALJ Suna's factual findings are supported by substantial evidence and that his legal determinations are correct. Therefore, the Commissioner's decision is **AFFIRMED**.

---

[1] Plaintiff is identified only by his first name and last initial in this opinion, pursuant to Chief District Judge Freda Wolfson's Standing Order 2021-10, issued on October 1, 2021, *available at* https://www.njd.uscourts.gov/sites/njd/files/SO21-10.pdf.

1

I.   **PROCEDURAL AND FACTUAL HISTORY**

   A.   **Procedural History**

Plaintiff filed for DIB on January 22, 2020, alleging disability beginning on November 19, 2018, due to status post type II odontoid and occipital condylar fracture; degenerative joint disease of right foot, status post fusion and internal fixation; and obesity. (D.E. 4 (Administrative Record ("R.")) at 31, 33, 89–93, 169, 187–195.) The state agency denied Plaintiff's applications at the initial and reconsideration levels. (R. 107–10, 112–13.) Plaintiff received a telephone hearing before ALJ Suna on November 2, 2020, and the ALJ issued a written decision on February 5, 2021, finding that Plaintiff was not disabled. (R. 28–45, 46–88.) The Appeals Council denied review on November 17, 2021, and Plaintiff subsequently filed the instant appeal in this Court. (R. 1–8; D.E. 8-1.) The parties timely completed briefing. (D.E. 9; 10; 11.)

   B.   **Factual History**

Plaintiff is fifty-four (54) years old and a high school graduate. (*See* R. 48, 56.) Plaintiff previously worked as a truck driver, security guard, and product assembler.[2] (R. 74.) The following is a summary of the medical evidence in the record.

On November 19, 2018, Plaintiff was involved in a work-related motor vehicle accident while driving his company's cement mixer that caused injury to his cervical spine and loss of consciousness; type II odontoid fracture, asymmetry of atlantooccipital joints; and left occipital condyle fracture. (R. 637, 648.) During Plaintiff's stay at the hospital, he underwent an occiput to C3 posterior instrumentation and tracheostomy after experiencing acute respiratory failure. (R. 637, 639.) Plaintiff was discharged from the hospital on December 31, 2018, while on

---

[2] Although Plaintiff's previous job as a truck driver required a medium level of exertion, Plaintiff performed the job at a heavy level of exertion. (R. 74). Plaintiff's work as a security guard was performed at a light level and his work as a product assembler was performed at a heavy level of exertion (*Id.*).

"amitriptyline, clonidine, [D]epakote, doxazosin, propranolol and r[i]speridone." (R. 648.) Following his discharge from the hospital, Plaintiff was noted to be "doing well". (R. 637.) Although Plaintiff was without any occipital headaches, he reported some pain in his neck and difficulty balancing. (*Id.*) At a follow-up appointment on January 10, 2019, Plaintiff advised Dr. Theodore Yip, M.D., that he was living alone, receiving daily visits, and support from his family. (R. 648.) Plaintiff reported general weakness and fatigue. (*Id.*)

Thereafter, Plaintiff underwent physical, occupational, and speech therapy, which concluded on February 21, 2019. (R. 686.) Plaintiff reported improvement in strength and balance. (*Id.*) At that time, Plaintiff reported no headaches, visual symptoms, tremors or paresthesias, but claimed that he was unable to return to work because he experienced issues with turning his head. (*Id.*) By April 18, 2019, Plaintiff was "discharged from all of his therapies and he continu[ed] with his home exercise program." (R. 708.) In May 2019, Plaintiff noted pain in his neck to be 4/10 without radiation to his arms. (R. 719.) While he reported some numbness in his hand and feet, he noted no difficulty with opening jars or dropping objects and was only occasionally taking Tylenol or Advil for neck pain. (*Id.*) In July 2019, a CT scan of Plaintiff's neck showed occipitocervical fixation with a healed odontoid fracture. (R. 739.)

In January 2020, Plaintiff was diagnosed with "a grade 4 posterior tibial tendon disfunction painful arthritic subtalar joint and rigid flat foot deformity" in his right foot. (R. 1307, 1337.) On February 6, 2020, Plaintiff underwent subtalar joint fusion and talonavicular fusion with internal fixation on his right foot. (R. 1302.) Immediately after surgery, Plaintiff was using assistive devices to aid in recovery, but later reported doing "very well" at follow-up appointments. (R. 1305, 1327–30.) Subsequent records also indicate that Plaintiff had a "good range of motion[;]"

did not have "any severe pain or discomfort[;]" was walking without an assistive device; and was able to exercise on a stationary bike without any difficulty. (R. 1330.)

In October 2020, Plaintiff visited Dr. Alan S. Nasar, M.D. (R. 1343, 1346, 1349.) Plaintiff reported neck pain ranging from 5/10 to 10/10 in severity, while his back ranged from 4/10 to 8/10 severity. (R. 1346.) Plaintiff reported pain radiating into his shoulders, numbness in his hands and feet, and poor balance. (*Id.*) On examination, Plaintiff had normal gait; an ability to crouch to the floor with mild difficulty and forward flex his spine to reach his hands just above the level of his ankles; difficulty walking on his heels; and a reduced range of motion in the cervical spine. (R. 1347.)

### C.     **Hearing Testimony**

At the telephonic administrative hearing on November 2, 2020, Plaintiff was represented by counsel. (R. 48.) ALJ Suna heard testimony from John Bopp, an impartial vocational expert ("VE Bopp"). (R. 46, 71.)

Plaintiff testified that he was involved in a work-related motor vehicle accident, wherein he "blacked out." (R. 58, 62–63.) As a result, Plaintiff could not provide further factual information about the accident. (R. 62–63.) After his surgery in February 2020, Plaintiff claimed that he could only stand for about thirty minutes due to pain and that if he wanted to stand up again, he must rest for about thirty minutes before he would be able to do so. (R. 66.) Plaintiff stated that he was unable to drive for more than an hour. (R. 67–68.)

VE Bopp testified that an individual with Plaintiff's vocational background and residual functional capacity ("RFC"), as assessed by ALJ Suna, would not be capable of working Plaintiff's previous jobs as a truck driver, security guard, or product assembler. (R. 74–75.) Plaintiff could perform other jobs in the national economy such as a cashier, small products assembler, or ticket

seller. (R. 75–76.) VE Bopp stated that an individual could hold these jobs even if the individual required use of a cane and had to switch "[f]rom standing to sitting every 30 minutes for a five minute change of position." (R. 76–77, 80.) VE Bopp explained that such limitations reduce the number of jobs accessible to such individual in the national economy. (R. 76–77, 80.) While there were disagreements between ALJ Suna and Plaintiff's attorney during the ALJ hearing regarding how the hearing was being conducted, Plaintiff's attorney proceeded with representation of Plaintiff. (*See generally* R. 46–88.)

## II.     LEGAL STANDARD

### A.     Standard of Review

In Social Security appeals, this Court has plenary review of the legal issues decided by the Commissioner. *Knepp v. Apfel*, 204 F.3d 78, 83 (3d Cir. 2000). Yet, this Court's review of the ALJ's factual findings is limited to determining whether there is substantial evidence to support those conclusions. *Hartranft v. Apfel*, 181 F.3d 358, 360 (3d Cir. 1999).

Substantial evidence "does not mean a large or considerable amount of evidence, but rather such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Pierce v. Underwood*, 487 U.S. 552, 565 (1988) (citation and internal quotations omitted). Thus, substantial evidence is "less than a preponderance of the evidence, but 'more than a mere scintilla.'" *Bailey v. Comm'r of Soc. Sec.*, 354 F. App'x. 613, 616 (3d Cir. 2009) (quoting *Richardson v. Perales*, 402 U.S. 389, 401 (1971)). Importantly, "[t]his standard is not met if the Commissioner 'ignores, or fails to resolve, a conflict created by countervailing evidence.'" *Bailey*, 354 F. App'x. at 616 (quoting *Kent v. Schweiker*, 710 F.2d 110, 114 (3d Cir. 1983)). However, if the factual record is adequately developed, "the possibility of drawing two inconsistent conclusions from the evidence does not prevent an administrative agency's finding from being

5

supported by substantial evidence." *Daniels v. Astrue*, No. 4:08-cv-1676, 2009 WL 1011587, at *2 (M.D. Pa. Apr. 15, 2009) (internal quotation marks omitted) (quoting *Consolo v. Fed. Mar. Comm'n*, 383 U.S. 607, 620 (1966)). "The ALJ's decision may not be set aside merely because [a reviewing court] would have reached a different decision." *Cruz v. Comm'r of Soc. Sec.*, 244 F. App'x. 475, 479 (3d Cir. 2007) (citing *Hartranft*, 181 F.3d at 360). This Court is required to give substantial weight and deference to the ALJ's findings. *See Scott v. Astrue*, 297 F. App'x. 126, 128 (3d Cir. 2008). Nonetheless, "where there is conflicting evidence, the ALJ must explain which evidence he accepts and which he rejects, and the reasons for that determination." *Cruz*, 244 F. App'x. at 479 (citing *Hargenrader v. Califano*, 575 F.2d 434, 437 (3d Cir. 1978)).

In considering an appeal from a denial of benefits, remand is appropriate "where relevant, probative and available evidence was not explicitly weighed in arriving at a decision on the plaintiff's claim for disability benefits." *Dobrowolsky v. Califano*, 606 F.2d 403, 407 (3d Cir. 1979) (internal quotation marks omitted) (quoting *Saldana v. Weinberger*, 421 F. Supp. 1127, 1131 (E.D. Pa. 1976)). Indeed, a decision to "award benefits should be made only when the administrative record of the case has been fully developed and when substantial evidence on the record as a whole indicates that the claimant is disabled and entitled to benefits." *Podedworny v. Harris*, 745 F.2d 210, 221–22 (3d Cir. 1984) (citations omitted).

    **B.**    **The Five-Step Disability Test**

A claimant's eligibility for social security benefits is governed by 42 U.S.C. § 1382. An individual will be considered disabled under the Act if the claimant is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment" lasting continuously for at least twelve months. 42 U.S.C. § 423(d)(1)(A). The impairment must be severe enough to render the individual "not only unable to do his previous

work but [unable], considering his age, education, and work experience, [to] engage in any kind of substantial gainful work which exists in the national economy." 42 U.S.C. § 423(d)(2)(A). A claimant must show that the "medical signs and findings" related to his or her ailment have been "established by medically acceptable clinical or laboratory diagnostic techniques, which show the existence of a medical impairment that results from anatomical, physiological, or psychological abnormalities which could reasonably be expected to produce the pain or other symptoms alleged." 42 U.S.C. § 423(d)(5)(A).

To make a disability determination, the ALJ follows a five-step sequential analysis. 20 C.F.R. §§ 404.1520(a), 416.920(a); *see also Cruz*, 244 F. App'x at 480. If the ALJ determines at any step that the claimant is or is not disabled, the ALJ does not proceed to the next step. 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4).

Step one requires the ALJ to determine whether the claimant is engaging in substantial gainful activity ("SGA"). 20 C.F.R. §§ 404.1520(a)(4)(i), 416.920(a)(4)(i). SGA is defined as work that "[i]nvolves doing significant and productive physical or mental duties . . . for pay or profit." 20 C.F.R. §§ 404.1510, 416.910. If the claimant engages in SGA, the claimant is not disabled for purposes of receiving social security benefits regardless of the severity of the claimant's impairments. *See* 20 C.F.R. §§ 404.1520(a)(4)(i), 416.920(a)(4)(i). If the individual is not engaging in SGA, the ALJ proceeds to step two.

Under step two, the ALJ determines whether the claimant suffers from a severe impairment or combination of impairments that meets the duration requirement found in Sections 404.1509 and 416.909. 20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii). An impairment or a combination of impairments is not severe when medical and other evidence establishes only a slight abnormality or combination of abnormalities that would have a minimal effect on an individual's ability to

work.  20 C.F.R. §§ 404.1521, 416.921; Social Security Rule ("SSR") 85-28, 96-3p, 96-4p.  An impairment or a combination of impairments is severe when it significantly limits the claimant's "physical or mental ability to do basic work activities."  20 C.F.R. §§ 404.1520(c), 416.920(c).  If a severe impairment or combination of impairments is not found, the claimant is not disabled.  20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii).  If the ALJ finds a severe impairment or combination of impairments, the ALJ then proceeds to step three.

Under step three, the ALJ determines whether the claimant's impairment or combination of impairments is equal to, or exceeds, one of those included in the Listing of Impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1.  20 C.F.R. §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii).  If an impairment or combination of impairments meets the statutory criteria of a listed impairment as well as the duration requirement, the claimant is disabled and entitled to benefits.  20 C.F.R. §§ 404.1520(d), 416.920(d).  If, however, the claimant's impairment or combination of impairments does not meet the severity of the listed impairment, or if the duration is insufficient, the ALJ proceeds to the next step.

Before undergoing the analysis in step four, the ALJ must determine the claimant's RFC.  20 C.F.R. §§ 404.1520(a), 404.1520(e), 416.920(a), 416.920(e).  An individual's RFC is the individual's ability to do physical and mental work activities on a sustained basis despite limitations from his or her impairments.  20 C.F.R. §§ 404.1545, 416.945.  The ALJ considers all impairments in this analysis, not just those deemed to be severe.  20 C.F.R. §§ 404.1545(a)(2), 416.945(a)(2); SSR 96-8p.  After determining a claimant's RFC, step four then requires the ALJ to determine whether the claimant has the RFC to perform the requirements of his or her past relevant work.  20 C.F.R. §§ 404.1520(e)-(f), 416.920(e)-(f).  If the claimant is able to perform his or her past relevant work, he or she will not be found disabled under the Act.  20 C.F.R. §§

404.1520(a)(4)(iv), 404.1520(f), 416.920(a)(4)(iv), 416.920(f). If the claimant is unable to resume his or her past work, the disability evaluation proceeds to the fifth and final step.

At step five, the ALJ must determine whether the claimant is able to do any other work, considering his or her RFC, age, education, and work experience. 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v). Unlike in the first four steps of the analysis where the claimant bears the burden of persuasion, at step five the Social Security Administration ("SSA") is "responsible for providing evidence that demonstrates that other work exists in significant numbers in the national economy that [the claimant] can do, given [the claimant's RFC] and vocational factors." 20 C.F.R. §§ 404.1560(c)(2), 416.960(c)(2). If the claimant is unable to do any other SGA, he or she is disabled. 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v).

## III. DISCUSSION

### A. The ALJ's Decision

On February 5, 2021, ALJ Suna issued a decision concluding that Plaintiff was not disabled from November 19, 2018, through the date of the decision. (*See generally* R. 31–42.) At step one, the ALJ found that Plaintiff had not engaged in any substantial gainful employment since November 19, 2018, the alleged onset date. (R. 33.) At step two, the ALJ found that Plaintiff had the following severe impairments: status post type II odontoid and occipital condylar fracture; degenerative joint disease of right foot, status post fusion and internal fixation; and obesity. (*Id.*)[3]

At step three, the ALJ concluded that Plaintiff's impairments, individually and in combination, did not meet or medically equal the severity of any listing. (R. 35.) In particular, Plaintiff's impairment did not meet the requirements of Listing 1.02, major dysfunction of a joint.

---

[3] Plaintiff was diagnosed with depressive disorder. (R. 34.) However, because this condition does not cause more than a minimal impact on Plaintiff's ability to perform basic mental work activities, the ALJ found this impairment to be non-severe. (*Id.*)

9

(*Id.*)  For this listing, Plaintiff would have to prove an involvement of one major peripheral weight-bearing joint that results in inability to ambulate effectively.  20 C.F.R. Pt. 404, Subpt. P, App. 1 § 1.02(A).[4]  Based on the record, ALJ Suna found that Plaintiff's limitations did not meet this condition.  (R. 35.)  In addition, the ALJ found that Plaintiff did not satisfy the conditions under Listing 1.03 because the medical reports did not evince an inability to ambulate effectively after surgery and Plaintiff's return to effective ambulation did not occur and was not expected to occur within twelve months of onset.  (*Id.*)[5]  Finally, ALJ Suna considered Plaintiff's obesity pursuant to the SSR 19-2p guidelines.  (*Id.*)  SSR 19-2p helps evaluate a medically determinable impairment ("MDI") of obesity.  *See* SSR 19-2p.  While obesity is not a listed impairment, the limitations caused by an MDI of obesity may equal a listing for the purpose of this evaluation.  *See id.*  Based upon SSR 19-2p guidelines, the ALJ determined that Plaintiff's obesity "does not equal a listing alone or in combination with another impairment(s)."  (R. 35.)

ALJ Suna found that Plaintiff's "statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record" and the evidence in the record "does not support the alleged loss of functioning."  (R. 36–37.)

Assessing Plaintiff's RFC, the ALJ found that Plaintiff could:

> [P]erform light work . . . except [he can] stand or walk no more than four hours in an eight hour workday; no more than frequent handling and fingering; no more than occasional operation of foot controls with the right foot; no more than occasional climbing of ramps and stairs; never climbing ladders, ropes or scaffolds; no more than occasional balancing, stooping, kneeling, crouching and crawling; no exposure

---

[4] Must be "characterized by gross anatomical deformity and chronic joint pain and stiffness with signs of limitation of motion or other abnormal motion of the affected joint(s), and findings on appropriate medically acceptable imaging of joint space narrowing, bony destruction, or ankylosis of the affected joint(s)".  20 C.F.R. Pt. 404, Subpt. P, App. 1 § 1.02.

[5] Listing 1.03 refers to "*Reconstructive surgery or surgical arthrodesis of a major weight-bearing joint,* with inability to ambulate effectively . . . and return to effective ambulation did not occur, or is not expected to occur, within 12 months of onset."  20 C.F.R. Pt. 404, Subpt. P, App. 1 § 1.03.

to hazards such as unprotected heights and dangerous machinery and no more than occasional operation of a motor vehicle.

(R. 35.)

At step four, the ALJ found that someone with Plaintiff's RFC could not perform Plaintiff's past jobs as a truck driver, security guard, or product assembler. (R. 40.) At step five, relying on VE Bopp's testimony, ALJ Suna explained that Plaintiff could perform work that existed in significant numbers in the national economy, including work as a cashier, small products assembler, or order caller. (R. 41.) ALJ Suna therefore concluded that Plaintiff was not disabled under the Act during the relevant period. (R. 42.)

**B.     Analysis**

On appeal, Plaintiff seeks reversal of the Commissioner's decision on the following grounds: (1) the ALJ's evaluation of Plaintiff's combined impairments was not supported by substantial evidence; (2) the Administrative Hearing was conducted with bias by ALJ Suna in violation of Plaintiff's due process rights; and (3) Plaintiff's RFC was not based on substantial evidence. (*See generally* D.E. 9.) This Court considers these arguments in turn and finds each unpersuasive.

**A.**

First, Plaintiff asserts that the ALJ erred in not specifically comparing Plaintiff's combination of impairments to Listing 11.04 for vascular insult to the brain. (D.E. 9 at 19–24.)[6]

The Listing of Impairments (Listings), located at 20 C.F.R., Pt. 404, Subpt., P, App. 1, is a regulatory device used to streamline the decision-making process by identifying those claimants

---

[6] Listing 11.04 requires a showing (persisting at least three months after insult) of either sensory or motor aphasia resulting in ineffective communication; or disorganization of motor function in two extremities resulting in an extreme limitation in the ability to stand from a seated position, balance while walking or standing or use upper extremities; or marked limitation in physical functioning and in certain areas of mental functioning like memory, interpersonal interactions, and concentration. 20 C.F.R. Pt. 404, Subpt. P, App. 1 § 11.04.

11

whose medical impairments are so severe that they would be found disabled regardless of their vocational background. 20 C.F.R. § 404.1525(a); 20 C.F.R. Pt. 404, Subpt. P, App. 1; *see also Sullivan v. Zebley*, 493 U.S. 521, 532 (1990). The medical conditions included in the listings are set at "a higher level of severity than the statutory standard" to establish disability, and only the most impaired will qualify. *Zebley*, 493 U.S. at 534–35. To demonstrate that an "impairment matches a listing, it must meet *all* of the specified medical criteria." *Zebley*, 493 U.S. at 530; 20 C.F.R § 404.1525(c)(3). An impairment that meets only some of the criteria for a listing, "no matter how severely, does not qualify." *Zebley*, 493 U.S. at 530.

Plaintiff bears the burden of producing objective evidence proving that Plaintiff meets or equals the criteria set forth in any of the aforesaid listing section. *See* 20 C.F.R. § 404.1512(a); *see also Bowen v. Yuckert*, 482 U.S. 137, 146 n.5 (1987) (stating that it is the claimant's burden to present medical findings that show that his impairment matches the severity of a listed impairment). Furthermore, in cases where a party is attacking a government agency's ruling, the party bears "the burden of showing that an error was harmful." *Davis–Harris v. Comm'r of Soc. Sec.*, Civ. No. 20–1215, 2021 WL 689130, at *1 (D.N.J. Feb. 23, 2021) (quoting *Shinseki v. Sanders*, 556 U.S. 396, 409 (2009)).

Here, Plaintiff has pointed to no objective medical evidence—not one medical opinion—establishing that his impairments met all the specified medical criteria under Listing 11.04. (*See generally* D.E. 9 at 19–24.) Plaintiff does not identify which section of Listing 11.04 that his impairments purportedly met nor point to any medical evidence demonstrating that his impairments met the severity. (*Id.*) The ALJ fully articulated his reasoning in determining that Plaintiff's impairments did not satisfy any Listing at step three. (R. 35.) The ALJ cited to medical diagnostic imaging, physical examinations, and medical evidence in the record to support his

12

findings. (R. 35–40.) It is undisputed that Plaintiff has the burden of proving a presumptively disabling impairment under the listings by presenting medical findings that either meet all the criteria of a listed impairment or are equal in severity to all of the criteria for a listed impairment. *Zebley*, 493 U.S. at 531 (citations omitted).

To the extent Plaintiff argues that the June 2021 opinion of Dr. Adams should be considered, Plaintiff's argument fails. Dr. Adams completed a Workers' Compensation Permanency Report four months after the ALJ's February 5, 2021 decision.[7] (R. 14–27.) It is well-established that evidence that was not before the ALJ cannot be considered by a district court in its determination of whether the ALJ's decision was supported by substantial evidence. *Matthews v. Apfel*, 239 F.3d 589, 593-95 (3d Cir. 2001). When a claimant tries to rely on evidence that was not before the ALJ in his appeal, "the district court may remand . . . only if the evidence is new and material and if there was good cause why it was not previously presented." *Matthews v. Apfel*, 239 F.3d at 593 (affirming the district court's decision to deny remand because claimant failed to show good cause as to why certain evidence was omitted). Based on the record evidence before the ALJ, it is clear that the ALJ considered Plaintiff's diagnoses and medical records. Thus, the opinion of Dr. Adams would not offer any evidence that would lead to a different result. Accordingly, Plaintiff's argument is rejected.

**B.**

Plaintiff contends that the ALJ hearing was conducted with bias, *inter alia*, because the ALJ conducted the hearing "impatiently," did a "trial-by-ambush interruption" of an attorney's cross-examination and opening statement, and "added things that he wanted in order to obtain a specific result denying benefits." (D.E. 9 at 24–25.)

---

[7] Dr. Adams' report noted that Plaintiff had mild depression and anxiety; issues with gait and balance; and weakness in his extremities. (R. 14–27.)

13

Due process is violated when "a claimant is deprived of the opportunity to present evidence to an ALJ in support of his or her claim, or where the ALJ exhibits bias or animus against the claimant." *Bordes v. Comm'r of Soc. Sec.*, 235 F. App'x 853, 857–58 (3d Cir. 2007) (citing *Ventura v. Shalala,* 55 F.3d 900, 902–03 (3d. Cir. 1995)). There is a rebuttable presumption that ALJs and others who function in a quasi-judicial capacity are unbiased. *See Schweiker v. McClure*, 456 U.S. 188, 195 (1982). Moreover, the party making the allegation of bias has the burden of overcoming this presumption. *See id*. at 196.

Here, Plaintiff's arguments are without merit. Plaintiff never raised any bias claim against the ALJ at the administrative level. (D.E. 10 at 17.) Moreover, Plaintiff's attorney was not prevented from representing his client. During the hearing, Plaintiff's attorney was permitted to present evidence to the ALJ, question the VE and Plaintiff, and conduct opening and closing statements. The record unequivocally demonstrates that Plaintiff was permitted to ask questions until Plaintiff rested his case. As such, Plaintiff's argument is rejected.

## C.

Finally, Plaintiff asserts that the ALJ's RFC assessment of light work was unsupported by substantial evidence, alleging that the ALJ should have found Plaintiff met the physical exertional requirements of sedentary work. (D.E. 9 at 25–26.)

When evaluating a Plaintiff's claim, an ALJ considers the persuasiveness of medical opinions and "will explain how [he or she] considered the supportability and consistency factors for a medical source's medical opinions or prior administrative medical findings in [the claimant's] determination or decision." 20 C.F.R. § 404.1520c(b)(2), (c)(1)–(5). However, "[a]n ALJ need not defer to a treating physician's opinion about the ultimate issue of disability because that determination is an administrative finding reserved to the Commissioner." *Gantt v. Comm'r Soc.*

*Sec.*, 205 F. App'x. 65, 67 (3d Cir. 2006) (citing 20 C.F.R. § 404.1527(e)). "[T]here is [also] no format to which an ALJ must adhere when giving h[is or her] reasoning so long as 'there is sufficient development of the record and explanation of findings to permit meaningful review.'" *Tompkins v. Astrue*, Civ. No. 12-1897, 2013 WL 1966059, at *13 (D.N.J. May 10, 2013) (quoting *Jones v. Barnhart*, 364 F.3d 501, 505 (3d Cir. 2004)). Importantly, the Third Circuit has held that an inconsistency between a Plaintiff's daily living activities and a medical opinion is a legitimate basis to discredit the opinion. *See, e.g.*, *Hubert v. Comm'r of Soc. Sec.*, 746 F. App'x 151, 153 (3d Cir. 2018); *Russo v. Astrue*, 421 F. App'x 184, 191 (3d Cir. 2011).

Here, in assessing Plaintiff's RFC, the ALJ provided a sufficient narrative discussion of Plaintiff's entire medical record during the alleged period of disability. (*See generally* R. 36–40.) The ALJ fully articulated his reasoning in determining Plaintiff's RFC. The ALJ cited to medical diagnostic imaging and physical examinations in the record, as well as Plaintiff's subjective complaints and reported limitations. (*Id.*) Plaintiff has pointed to no medical evidence that was overlooked concerning Plaintiff's functional limitations and impairments to support his position that the ALJ erred in determining his RFC assessment. Indeed, it is Plaintiff's burden to prove evidence of his disability, including his RFC. *See* 20 C.F.R. § 404.1512(a). "[C]ourts are not permitted to re-weigh the evidence or impose their own factual determinations." *Chandler v. Comm'r. of Soc. Sec.*, 667 F.3d 356, 359 (3d Cir. 2011). Therefore, reviewing the ALJ's decision and the medical record as a whole, it is clear that Plaintiff is able to perform an eroded range of light exertional work, as opined by the treating and consultative physicians. Substantial evidence—*i.e*, more than a mere scintilla of evidence— supports the ALJ's decisions and this Court will therefore affirm.

## IV. <u>CONCLUSION</u>

For the foregoing reasons, this Court finds that ALJ Suna's factual findings were supported by substantial credible evidence in the record and that his legal determinations were correct. The Commissioner's determination is therefore **AFFIRMED**. An appropriate order follows.

s/ *Susan D. Wigenton*  
**SUSAN D. WIGENTON**  
**UNITED STATES DISTRICT JUDGE**

Orig: Clerk  
cc: Parties